Terence J. Scanlan (AK Bar #1103012)
Lindsey M. Pflugrath (AK Bar #1306035)
SKELLENGER BENDER, P.S.
1301 – 5th Avenue, Suite 3401
Seattle, WA 98101-2605
Telephone: 206-623-6501
Facsimile: 206-447-1973
Email: tscanlan@skellengerbender.com
Email: lpflugrath@skellengerbender.com
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| HANSON ALASKA PROFESSIONAL SERVICES, INC., an Alaska corporation, | NO. |
| Plaintiff, | COMPLAINT |
| v. | |
| KIEWIT INFRASTRUCTURE WEST CO., a Delaware corporation,, | |
| Defendant. | |

Plaintiff HANSON ALASKA PROFESSIONAL SERVICES, INC. (hereafter "Hanson"), by ant through its undersigned attorneys, and alleges the following:

## I. INTRODUCTION

1. This is an action by Plaintiff against Defendant KIEWIT INFRASTRUCTURE WEST COMPANY (hereafter "Kiewit") for monetary relief arising out of engineering services provided by Hanson for the design and construction of improvements to the Glenn Highway for the Alaska Department of Transportation.

COMPLAINT – 1

skellengerbender
1301 - Fifth Avenue, Suite 3401
Seattle, Washington 98101-2605
(206) 623-6501

Case 3:16-cv-00141-JWS   Document 1   Filed 06/28/16   Page 1 of 11
3-016 1364105

## II. PARTIES

2. Plaintiff is an Alaska corporation, duly organized and existing under the laws of the State of Alaska.

3. Upon information and belief, Defendant is a corporation registered in the State of Delaware with offices throughout the United States, including Alaska. Defendant is involved in the business of construction contracting.

## III. JURISDICTION AND VENUE

4. Jurisdiction is properly with the District Court because Plaintiff is an Alaska corporation and Defendant is a Delaware corporation, and diversity therefore exists. The amount in controversy, without interest and costs, exceeds the sum or value specified by 28 U.S.C. § 1332.

## IV. THE GLENN HIGHWAY IMPROVEMENT PROJECT

5. The Glenn Highway is part of Alaska Route 1 and extends 179 miles from Anchorage to an unincorporated area of Alaska called "Glennallen" on the Richardson Highway – hence, the name "Glenn Highway."

6. The Alaska Department of Transportation (hereafter AKDOT) issued a Request for Qualifications (RFQ) in August 2013 for the "Glenn Highway Improvement Project" (hereafter the "Project"). The Project involved widening the northbound segment of the Highway between the highway interchanges at Hiland and Artillery Roads, adding a third northbound lane, and designing the capability for adding an HOV lane in the future. Because the Glenn Highway crosses the Eagle River, the upgrade required design of a new bridge over the River, together with culverts and other ancillary structures and analysis.

7. In February 2014, AKDOT issued a Request for Proposal (RFP) for the Project. AKDOT required the project to be designed and constructed by "design-build" teams, and to be built for a lump sum or not-to-exceed price of $42.5 million.

COMPLAINT – 2

skellengerbender

1301 - Fifth Avenue, Suite 3401
Seattle, Washington 98101-2605

Case 3:16-cv-00141-JWS   Document 1   Filed 06/28/16   Page 2 of 11
3-016 1364105

## V. RELATIONSHIP BETWEEN KIEWIT AND HANSON

8. Kiewit and Hanson entered into a Memorandum of Understanding (MOU) on August 15, 2013, for the purpose of responding to AKDOT's RFQ. The MOU contemplated that Hanson would be Kiewit's lead designer for the Project, and that the parties would team during the pre-award phase and, if awarded the Project, execute a subcontract for design services.

9. After Kiewit was selected by AKDOT for the Project, Kiewit and Hanson signed a Subcontract for Design on April 25, 2014. Hanson's scope of services was set forth in Exhibit A to the Subcontract.

10. The Subcontract expressly entitles Hanson to seek an equitable adjustment to its compensation, in the event of an Owner or Contractor-directed change to Hanson's scope of work.

11. The contract expressly requires Hanson to be compensated for costs attributable to delays caused by Kiewit via change order.

12. Upon information and belief, the Prime Contract between Kiewit and AKDOT is a lump sum contract.

13. Hanson was not involved in preparing or negotiating the Prime Contract price.

## VI. KIEWIT'S PROJECT SCHEDULE

14. In an apparent effort to be selected for the Project, Kiewit reduced its proposed construction schedule from two years to one year. Kiewit did not discuss this reduction in the construction schedule with Hanson, and did not get Hanson's agreement to or approval of this change in the schedule.

15. Kiewit's unilateral reduction in the construction schedule resulted in a constrained design schedule, which did not allow for proper review of design submittals and, therefore, resulted in excessive rework.

COMPLAINT – 3

16. For a project of this size and scope, designs are submitted in stages -- when the design is at 30% completion, then 60% completion and then 90% completion. This is supposed to allow the orderly development of the design, as well as changes to the design in a timely and, therefore, cost-effective manner.

17. Design submittals were reviewed by three entities in the following sequential order: Kiewit, an Independent Quality Firm (IQF), and AKDOT's own consultant, HDR. Kiewit's schedule required design of the next phase to continue while the submittals were being reviewed by the reviewing entities. As a result, comments on the submittals were often provided after the next stage of design was complete or even later.

18. For example, Kiewit directed Hanson to make changes to the profile of the "North Bound Mainline" to provide additional clearance under the Artillery Road overpass. This change was requested after the 90% design phase had been completed and despite the profile having been approved at both the 30% and 60% review stages. This change required a complete redesign of the Mainline, two adjacent ramps, drainage and the foundation under the overcrossing. This effort cost Hanson significant resources outside the scope of what was anticipated by the Subcontract. Hanson is owed compensation for this additional work.

19. Similarly, Kiewit requested Hanson design a raised profile at the Artillery Road exit ramp after the 100% design was completed, despite approving the profile at the 30%, 60% and 90% design submittal stages. This request again required changes be made to the Mainline profile and the drainage in the area. This effort cost Hanson significant resources outside the scope of what was anticipated by the Subcontract. Hanson is owed compensation for this additional work.

20. Rebischke Lane is an existing roadway that has no right-of-way shown on the survey or maps provided by Kiewit to Hanson. Rebischke Lane was impacted by Project improvements to Eagle View Drive, necessitating design modifications in accordance with AKDOT's current standards. The Rebischke Lane design improvements were shown on

COMPLAINT – 4

skellengerbender

1301 - Fifth Avenue, Suite 3401
Seattle, Washington 98101-2605
(206) 623-6501

Case 3:16-cv-00141-JWS   Document 1   Filed 06/28/16   Page 4 of 11
3-016 1364105

Hanson's 30%, 60% and 90% design submittals. After the 100% submittal, AKDOT stated that they would not be providing a right-of-way for Rebischke Lane, and Kiewit directed Hanson to redesign the improvements to be completed within the limits of the Eagle View Drive right-of-way. This revision to a previously approved design cost Hanson significant resources outside the scope of what was anticipated by the Subcontract. Hanson is owed compensation for this additional work.

21. In another example of late Kiewit-directed design changes, it became apparent at the 30% design phase that a church along the Highway was encroaching onto the right-of-way. Hanson was advised by Kiewit that AKDOT would investigate the encroachment and that Hanson was not to show an entrance or improvement to the property. Hanson's 30%, 60% and 90% design submittals, therefore, did not show an entrance or improvement to the property. However, after receiving the 100% submittal, Kiewit directed Hanson to provide access to the church property, based on comments from AKDOT. This effort cost Hanson significant resources outside the scope of what was anticipated by the Subcontract. Hanson is owed compensation for this additional work.

22. Additionally, after Hanson's design was nearly complete, Kiewit asked Hanson to raise the profile of northbound Glenn Highway when the design was nearly complete. Hanson provided an estimate for the cost of the services. The actual cost of the services was more than the estimate. Kiewit has refused to pay for the full cost of the services. Hanson is owed compensation for this work.

23. Additional instances of late-provided comments on the design required the designs to be changed or modified well-after the designs had been submitted and after the design had entered the next phase of development. This cost Hanson significant resources outside the scope of what was anticipated by the Subcontract. Hanson is owed compensation for this additional work.

COMPLAINT – 5

24. Kiewit also unilaterally eliminated an entire phase of the design submittal from the construction schedule. After comments are received on the 90% design submittal, it is necessary and customary to have a 100% submittal review phase before the drawings are "Issued for Construction" (IFC). Kiewit removed this review from its schedule all together. The review, nonetheless, took place and took over one month to complete.

25. Kiewit also eliminated any time in the construction schedule for preparation of construction drawings, the point at which any comments on the 100% submittal are to be incorporated. Preparation of construction drawings took two months.

26. In an effort to keep the Project on this (unrealistic) schedule, Kiewit directed Hanson to perform work that was out-of-sequence and before final design data was available. For example, Kiewit directed Hanson to prepare a preliminary set of bridge scour calculations for the Eagle River Bridge before borings from the river could be taken. Hanson then had to modify its design in order to address the new/final data. This work was extra work, necessitated by Kiewit's unreasonable schedule and Kiewit's decision to direct work to be completed prematurely and without full information. This work was outside the scope of work contemplated by Hanson's Subcontract. Hanson is owed compensation for this additional work.

27. Hanson went to extraordinary efforts to attempt to comply with the unrealistic and unreasonable construction schedule created by Kiewit, and expended significant resources that were not provided for in its scope of work to do so. Hanson is owed compensation for this additional work.

## VII. HANSON'S SCOPE OF WORK

28. When Hanson was preparing its scope of services, Kiewit advised Hanson to eliminate certain items from its scope of work, including, but not limited to, widening of the southbound entrance ramp and installation of a new signal at Hiland Road; analysis and design relating to the ENSTAR gas line; design of the Meadow Creek culverts; and design of

COMPLAINT – 6

guardrails, bike paths, etc. Kiewit then asked Hanson to perform these services when the Project was underway. Hanson is owed compensation for this additional work.

29. Roadside Safety Analysis (RSA) was also not part of Hanson's scope of work. Late in the design, Kiewit requested reduction of guardrails along northbound Glenn Highway. RSA was required in order for this design change to take place. Hanson performed the RSA as additional services and is owed compensation for this work.

30. Analysis of fish passage designs was not part of Hanson's scope of work. These services were requested by Kiewit during the course of the Project and were performed as additional services. Hanson is owed compensation for this work.

31. Kiewit provided Hanson with erroneous information, which Hanson relied upon in developing its designs. For example, information regarding the utilities at VFW Road and Meadow Creek, provided by Kiewit during the proposal phase, was incorrect. This required multiple redesigns of the VFW Road relocation. Hanson is owed compensation for this work.

32. Despite being advised by Hanson that it was neither needed nor required, Kiewit asked Hanson to design a guardrail as protection around the gas valve located along the west side of Eagle View Drive, even though the gas valve was located beyond the clear zone for approaching northbound traffic. Ultimately, AKDOT directed Kiewit to remove the guardrail from the design plans. Hanson is owed compensation for this work.

33. Kiewit/AKDOT also changed the design criteria for abutments designed by Hanson. Hanson provided a design in its proposal, using semi-integral and Illinois-style semi-integral abutment details. Because the required elastomeric bearing height exceeded the 6-inch maximum allowed in the "Draft" Alaska Bridges and Structures Manual (provided in the RFP), the Alaska semi-integral abutment details could not be used. The Illinois-style semi-integral abutment using PTFE sliding bearings as designed also avoided the need for construction joints at the abutments. This design was approved by the Independent Quality

COMPLAINT – 7

Firm (IQF) at the 30% submittal and forwarded on to the AKDOT for review. Insisting on an AKDOT-type semi-integral abutment, the AKDOT changed their design criteria to accept elastomeric bearings over 6 inches in height with their semi-integral abutment details. Subsequently, all previous abutment work and PTFE bearing design had to be redone for the change. This redesign cost Hanson significant resources outside the scope of what was anticipated by the Subcontract. Hanson is owed compensation for this additional work.

34. Part of Hanson's scope of work was to develop a design for the relocation of a pedestrian path from the east side to the west side of a northbound bridge. Hanson's fee estimate was based on mirroring the existing bridge geometry and features, as this would not change the condition of the bridge. A barrier on the west side deck was proposed, using the same pedestrian and traffic bridge rail attached to the existing attachment points on the east exterior girder. Kiewit approved this approach, and AKDOT/HDR agreed. As part of Hanson's initial approach, the barrier between the roadway and pedestrian path was to be anchored to the deck in a similar manner as the existing condition. Kiewit proposed eliminating the barrier, citing that there was sufficient clear zone between traffic and the pedestrians, and that it was not needed. Hanson advised Kiewit that the pedestrian fence/rail was not crash worthy and the barrier was needed. Kiewit, nonetheless, requested that the existing traffic rail be left in place and modifications be made to accommodate the fence. Only at 100% design did Kiewit inform Hanson that AKDOT rejected the plan, stating the traffic rail did not meet the RFP requirements. Substantial hours were spent in redesign, researching other alternatives and standard practices, and addressing reviewer's comments. Hanson is owed compensation for this additional work. Ultimately, Kiewit did not relocate the pedestrian path at all.

35. There are numerous other instances when the design criteria changed, either because Kiewit wanted to modify the design criteria to use different suppliers or materials, or Kiewit found out that its original intent was not consistent with AKDOT requirements.

COMPLAINT – 8

skellengerbender

1301 - Fifth Avenue, Suite 3401
Seattle, Washington 98101-2605

3-016 1364105

Hanson responded to each of these instances by researching potential alternatives, coordinating with new vendors/material suppliers and/or performing redesign. These services were performed as additional services outside the scope of the Subcontract and Hanson is owed compensation for these services.

36. Kiewit directed Hanson to provide multiple preliminary reports relating to Hydrology and Hydraulics, which were not included in Hanson's scope of services. Hanson is owed compensation for these services.

37. Finally, Kiewit directed Hanson to hire a subconsultant, SurvBase, to obtain updated and accurate survey information. This was not included in Hanson's original scope of work, and Hanson is owed reimbursement for the compensation paid to SurvBase.

## VIII. COMPENSATION WITHHELD BY KIEWIT

38. Hanson is owed $970,121.00 for services performed by Hanson pursuant to the Subcontract, which Kiewit has wrongfully withheld.

## IX. COUNT I

### BREACH OF CONTRACT

39. Paragraphs 1-38 are incorporated herein as though fully set forth below.

40. Kiewit and Hanson entered into a Subcontract for the provision of professional services.

41. The Subcontract explicitly described the Scope of Work contemplated by the Subcontract and the fee to be paid to Hanson.

42. The Subcontract required Hanson to perform the Scope of Services in a timely manner and within the standard of care for professionals providing similar services. Hanson did so.

43. The Subcontract requires Kiewit to pay Hanson for services performed. Kiewit has failed to do so.

COMPLAINT – 9

skellengerbender

1301 - Fifth Avenue, Suite 3401
Seattle, Washington 98101-2605

Case 3:16-cv-00141-JWS   Document 1   Filed 06/28/16   Page 9 of 11
3-016 1364105

44. The Subcontract requires Kiewit to equitably adjust the Subcontract for delays and changes caused by Kiewit. Kiewit has failed to do so.

45. Kiewit's failure to pay Hanson for services provided, failure to adjust the Subcontract to compensate Hanson for additional services performed by Hanson, and failure to adjust the Subcontract to compensate Hanson for the costs of delays caused by Kiewit are breaches of the Subcontract.

46. Hanson has been proximately and directly damaged by these breaches.

## X.   COUNT II

### QUANTUM MERUIT / UNJUST ENRICHMENT

47. Paragraphs 1-46 are incorporated herein as though fully set forth below.

48. Hanson provided a significant amount of support to Kiewit during the Project in the form of professional services. The scope of services provided by Hanson far exceed, as demonstrated herein, the work intended by the Subcontract and the fee to be paid for the services.

49. Services provided by Hanson were rendered at Kiewit's request.

50. Kiewit was undeniably benefitted by Hanson's professional expertise and the services rendered, and, indeed, could not have completed the Project without them.

51. Kiewit was aware that the services were provided in exchange for payment of fees.

52. Kiewit was aware that services provided outside the scope of work in the Subcontract were to be compensated as "additional services" in addition to the fee set forth in the Subcontract.

53. Kiewit has failed to pay for services rendered and has failed to pay for costs incurred by delays.

COMPLAINT – 10

skellengerbender

1301 - Fifth Avenue, Suite 3401
Seattle, Washington 98101-2605

Case 3:16-cv-00141-JWS   Document 1   Filed 06/28/16   Page 10 of 11
3-016 1364105

54. Kiewit received and accepted the services provided by Hanson under circumstances in which it would make it inequitable for Kiewit not to pay Hanson for the value of those services.

## XI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that judgment be entered in its favor against Defendant in the amount of Plaintiff's damages that it has suffered.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a trial by jury on all issues deemed triable.

DATED this 28th day of June, 2016.

_____ for

Terence J. Scanlan, AK Bar #1103012
Lindsey M. Pflugrath, AK Bar #1306035
SKELLENGER BENDER, P.S.
1301 – 5th Avenue, Ste. 3401
Seattle, WA 98101-2605
Telephone: 206-623-6501
Facsimile: 206-446-1973
Email: tscanlan@skellengerbender.com
Email: lpflugrath@skellengerbender.com
Attorneys for Hanson Alaska Professional Services, Inc.

COMPLAINT – 11

skellengerbender

1301 - Fifth Avenue, Suite 3401
Seattle, Washington 98101-2605

Case 3:16-cv-00141-JWS   Document 1   Filed 06/28/16   Page 11 of 11

3-016 1364105